ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Alion Science and Technology Corporation ) ASBCA No. 58992
)
Under Contract No. DAAB07-03-D-C213 *et al.* )

APPEARANCES FOR THE APPELLANT: Terry L. Elling, Esq.
Georgina C. Shepard, Esq.
Holland & Knight LLP
McLean, VA

APPEARANCES FOR THE GOVERNMENT: E. Michael Chiaparas, Esq.
DCMA Chief Trial Attorney
Gregory T. Allen, Esq.
Trial Attorney
Defense Contract Management Agency
Chantilly, VA

## OPINION BY ADMINISTRATIVE JUDGE MELNICK
## ON APPELLANT'S MOTION FOR SUMMARY JUDGMENT

Alion Science and Technology Corporation (Alion) appeals from the Defense
Contract Management Agency (DCMA) administrative contracting officer's (ACO's)
21 August 2013 final decision asserting a $338,921 claim seeking penalties for the
alleged inclusion of expressly unallowable costs in Alion's final indirect cost rate
proposal for fiscal year (FY) 2005. Our jurisdiction to entertain this appeal arises from
the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. Alion moves for
summary judgment arguing that the government's claim was asserted more than six years
after it accrued and is therefore time-barred under the CDA, 41 U.S.C. § 7103(a)(4)(A).
The government opposes the motion.

## STATEMENT OF FACTS (SOF) FOR THE PURPOSES OF THE MOTION

1. During the relevant period, Alion had multiple contracts with the government
(*see, e.g.*, R4, tabs 14, 17, 18, 21, 29, 31, 33, 34).[1] Alion's contracts incorporated
numerous Federal Acquisition Regulation (FAR) clauses by reference, including
FAR 52.216-7, ALLOWABLE COST AND PAYMENT (DEC 2002); and FAR 52.242-3,
PENALTIES FOR UNALLOWABLE COSTS (MAY 2001) (*see* R4, tab 18 at 138-39, tab 21

---

[1] The Rule 4 file also contains numerous contracts between the government and other
contractors. The relevance of these contracts to the current appeal is unclear.

at 150-52, tab 29 at 180-81, tab 33 at 193-94).[2] The Allowable Cost and Payment clause provided, in pertinent part:

> (d) *Final indirect cost rates.* (1) Final annual indirect cost rates and the appropriate bases shall be established in accordance with Subpart 42.7 of the Federal Acquisition Regulation (FAR) in effect for the period covered by the indirect cost rate proposal.
>
> (2)(i) The Contractor shall submit an adequate final indirect cost rate proposal to the Contracting Officer (or cognizant Federal agency official) and auditor within the 6-month period following the expiration of each of its fiscal years. Reasonable extensions, for exceptional circumstances only, may be requested in writing by the Contractor and granted in writing by the Contracting Officer. The Contractor shall support its proposal with adequate supporting data.
>
> (ii) The proposed rates shall be based on the Contractor's actual cost experience for that period. The appropriate Government representative and the Contractor shall establish the final indirect cost rates as promptly as practical after receipt of the Contractor's proposal.

The Penalties for Unallowable Costs clause provided, in pertinent part:

> (b) Contractors which include unallowable indirect costs in a [final indirect cost rate] proposal may be subject to penalties. The penalties are prescribed in 10 U.S.C. 2324 or 41 U.S.C. 256, as applicable, which is implemented in Section 42.709 of the Federal Acquisition Regulation (FAR).
>
> (c) The Contractor shall not include in any [final indirect cost rate] proposal any cost that is unallowable, as defined in Subpart 2.1 of the FAR, or an executive agency supplement to the FAR.
>
> (d) If the Contracting Officer determines that a cost submitted by the Contractor in its [final indirect cost rate]

---

[2] Some of Alion's contracts only incorporated one of the two clauses (*see* R4, tabs 14, 17, 31, 34). The parties, however, do not dispute the applicability of either clause to this appeal.

proposal is expressly unallowable under a cost principle in the FAR, or an executive agency supplement to the FAR, that defines the allowability of specific selected costs, the Contractor shall be assessed a penalty....

....

(f) Determinations under paragraphs (d) and (e) of this clause are final decisions within the meaning of the Contract Disputes Act of 1978....

2. Alion submitted its final indirect cost rate proposal for FY 2005 electronically as a Microsoft Excel spreadsheet file on 31 March 2006 (gov't resp., Havican decl. ¶¶ 2-3; supp. R4, tab 57). Alion's submission included a summary page, Schedules A through E,[3] and supporting Schedules 1 through 26 (supp. R4, tab 57). The summary page identified Alion's proposed final indirect cost rates by cost pool and business segment, including the amount of costs and the allocation base for each cost pool, and referenced the corresponding schedules (*id.* at 494).

3. Schedules A through E provided further detail regarding the calculation of the proposed rates. For instance, Schedule A (Engineering Overhead) and Schedule B (General and Administrative Expense (G&A)) identified the amount of costs and the allocation bases for the respective cost pools by category, both in total and by business segment, and further referenced the supporting schedules (supp. R4, tab 57 at 495-96). The supporting schedules provided an additional breakdown of costs by type. For example, Schedule 14, relating to G&A costs, specified costs by job number and account title, listed the recorded amount for each job number, and further identified the amount of costs for each job number by business segment (*id.* at 522-26). Both the schedules and supporting schedules included columns in which Alion made adjustments to the total amounts for unallowable costs and other adjustments, which were reflected in an "Allocable Amount" column (supp. R4, tab 57).

4. Alion's electronic submission also included additional spreadsheets that corresponded to the various supporting schedules. These additional spreadsheets allowed for the identification of specific costs within Alion's final indirect cost rate proposal. For example, within Schedule 14, the entry for job number 90035003001000000 lists a recorded amount of $718,967 (supp. R4, tab 57 at 522). The corresponding entry in the spreadsheet titled "Sch 14 Table" lists a grand total amount of $718,967.05. Double-clicking this cell opens a new spreadsheet containing approximately 750 individual items of cost with

---

[3] Alion's 31 March 2006 submission identifies these documents as Exhibits A through E. In their motion papers, the parties refer to these documents as "schedules." We refer to the documents as "schedules" to maintain consistency.

accompanying information, including the amount of the cost, the date incurred, a general description of the cost, and various accounting data. (Supp. R4, tab 57, native format documents[4])

5. Alion asserts that it accounted for salary related costs (SRC) using standard cost rates established at the beginning of the fiscal year. To account for the difference between the standard cost rates and its actual costs, Alion maintains that it utilized a variance account. (App. mot., Parr dep. at 19, 29, ex. 1 (Parr decl.) ¶ 3) Schedule 14 of Alion's FY 2005 final indirect cost rate proposal contained an entry for job number 98035900002000000, "YEAR END SRC EXPENSE VARIANCE," with a recorded amount of $419,749 (supp. R4, tab 57 at 524). Double-clicking on the corresponding entry in the Sch 14 Table spreadsheet reveals that this amount consists of various adjustments. However, with the exception of a transaction related to Hurricane Katrina disaster relief, the specific costs that are the bases for the adjustments are not identified. (Supp. R4, tab 57, native format documents) The government contends that this variance account was the only item regarding Alion's SRC costs in Alion's March 2006 submission, and that this variance account does not provide detailed information concerning the specific nature of the costs included in the variance (gov't resp., Havican decl. ¶ 8).

6. On 13 November 2006, the Defense Contract Audit Agency (DCAA) notified Alion by email that DCAA could not begin its audit of Alion's FY 2005 final indirect cost rate proposal because Alion failed to provide Schedule H-1 (government participation in indirect expense pools) and Schedule L (reconciliation of total payroll to total labor distribution) (supp. R4, tab 59).

7. Alion submitted Schedules H through K on or about 7 September 2007 (compl. and answer ¶ 18; gov't resp., Havican decl. ¶ 7).

8. DCAA notified Alion by letter dated 7 January 2008 that it considered Alion's FY 2005 final indirect cost rate proposal inadequate. DCAA's letter noted, in relevant part, the following inadequacies:

- The Summary of Claimed Indirect Expense Rates does not include SRC. If SRC is claimed by the contractor, than [sic] it should be included as a rate in the official indirect rate submission.
- Schedule H, Contract Direct Costs and Indirect Costs Claimed and Not Claimed - Claimed costs are not

---

[4] The Board allowed the parties to submit certain documents in their original electronic format because elements of these documents are both material and cannot be captured in hard copy.

4

presented in the same level of detail as used for billing purposes (i.e. delivery or task order). Indirect costs are not separately shown for each final indirect rate. Costs in excess of contract ceilings are not identified as "not claimed" on a separate line.

(Supp. R4, tab 62 at 561)

9. Alion resubmitted, *inter alia*, Schedule H on 8 February 2008 (compl. and answer ¶ 18; gov't resp., Havican decl. ¶ 7).

10. Alion provided DCAA with a Microsoft Access database with the filename "FY 2005 JAMIS DATA" (JAMIS database) on 21 January 2008. Alion provided a revised JAMIS database to DCAA on 20 February 2008. (Gov't resp., Diaz decl. ¶¶ 5-6; supp. R4, tabs 63, 71) The JAMIS database included three tables that provided transactional information for tens of thousands of cost transactions (supp. R4, tab 72, native format documents). The government asserts that it was not until the submission of the JAMIS database that the government was able to identify the Engineering Overhead and G&A costs (other than SRC costs) at issue as expressly unallowable (gov't resp., Diaz decl. ¶ 5).

11. Alion submitted an SRC proposal on or about 20 February 2008 (gov't resp., Havican decl. ¶ 8; supp. R4, tab 70). Alion provided additional information regarding its SRC costs to DCAA in June 2008 (supp. R4, tabs 73-77).

12. DCAA issued an audit report dated 19 April 2012 regarding Alion's FY 2005 final indirect cost rate proposal (R4, tab 38). DCAA questioned numerous cost elements within Alion's Engineering Overhead and G&A cost pools and recommended penalties (*id.* at 213, 218-20, 229-32, 248).

13. The DCMA ACO issued a final decision dated 21 August 2013 asserting a $338,921 claim for penalties against Alion, pursuant to FAR 52.242-3, for the alleged inclusion of expressly unallowable costs in its FY 2005 final indirect cost rate proposal. The ACO determined that Alion had included nine categories of expressly unallowable costs; notes 1 through 4 involved engineering overhead costs, notes 5 and 6 addressed SRC costs, and notes 7 through 9 concerned non-SRC G&A costs. The ACO determined that the government's claim was not barred by the statute of limitations because Alion's original submission of its final indirect cost rate proposal did not include Schedule H.[5] (R4, tab 54)

---

[5] The ACO also considered the government's claim timely because Alion's original submission was not certified by the proper official in accordance with

14. Alion filed a timely appeal, which the Board docketed as ASBCA No. 58992.

15. On 28 May 2014, DCAA Supervisory Auditor Arelis Diaz stated in a declaration that:

> 8. Schedule H of the FY 2005 Proposal, which was not provided in a complete form until February 8, 2008, was required for DCAA to identify what indirect costs are allocated to auditable Government contracts.... These are the contracts included in the calculation of the Auditable Dollar Volume ("ADV"). The ADV is significant because it is directly proportional to the materiality of the contractor's costs and the risk inherent to those costs....
>
> ....
>
> 10. Schedule H and Schedule H-1 are necessary for a determination of the materiality of the proposed indirect rates. This is a necessary step in the auditing process. Schedule H-1 demonstrates the extent that flexibly-priced contracts participate in the absorption of indirect expenses. Government participation is used to determine the materiality of the proposed indirect rates, and is the basis for the auditor's determination as to which indirect cost pools should be subjected to detailed transaction testing.

(Gov't resp., Diaz decl. ¶¶ 8, 10)

## DECISION

Alion moves for summary judgment on the basis that the government's claim is time-barred under the CDA. The CDA requires that "each claim by the Federal Government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). A party's failure to submit a claim within the six-year limitations period is an affirmative defense to the claim. *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58175, 15-1 BCA ¶ 35,988 at 175,825. As the proponent of its affirmative defense, Alion bears the burden of proving that the government's claim for penalties was untimely. *See id.*; *Brunswick Bank & Trust Co. v. United States*, 707 F.2d 1355, 1360 (Fed. Cir. 1983).

---

FAR 52.242-4. The government has not advanced this argument in response to Alion's motion.

6

Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Am. Gen. Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,635. A material fact is one which may make a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing both the absence of disputed material facts and that it is entitled to judgment as a matter of law. *Dongbuk R&U Eng'g Co.*, ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,637. If the moving party makes the requisite showing, the burden shifts to the nonmovant to show that there is a genuine, material factual issue for trial. *BAE Sys. San Francisco Ship Repair*, ASBCA No. 58810, 14-1 BCA ¶ 35,667 at 174,588; *Teledyne Brown Eng'g, Inc.*, ASBCA No. 58636, 14-1 BCA ¶ 35,495 at 173,998.

The ACO asserted the claim for penalties against Alion by final decision dated 21 August 2013 (SOF ¶ 13). To be untimely, the government's claim must have accrued prior to 21 August 2007. A claim accrues "when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." FAR 33.201. The events fixing liability should have been known when they occurred unless they were either concealed or inherently unknowable at the time. *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,017. Only facts that could not reasonably be known by the claimant postpone claim accrual. *United States v. Commodities Export Co.*, 972 F.2d 1266, 1272 (Fed. Cir. 1992).

In determining when the alleged liability is fixed, we begin by examining the legal basis of the claim. *Gray Personnel, Inc.*, ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,475. Pursuant to 10 U.S.C. § 2324(b), a head of an agency shall assess a penalty, including interest, if he "determines that a cost submitted by a contractor in its proposal for settlement [of indirect costs incurred] is expressly unallowable under a [FAR] cost principle." The FAR delegates this responsibility to the cognizant contracting officer, FAR 42.709-2(a)(1), and directs him to assess a penalty "when the submitted cost is expressly unallowable under a cost principle in the FAR." FAR 42.709-3(a). The Penalties for Unallowable Costs clause in Alion's contracts provides that the contractor shall be assessed a penalty if "the Contracting Officer determines that a cost submitted by the Contractor in its [final indirect cost rate] proposal is expressly unallowable" (SOF ¶ 1). These provisions establish that liability for penalties is fixed when a contractor submits a final indirect cost rate proposal containing expressly unallowable indirect costs.

As stated in her final decision, the ACO asserted a claim for penalties due to the alleged inclusion of expressly unallowable costs in Alion's final indirect cost rate proposal for FY 2005 (SOF ¶ 13). The parties do not dispute that Alion submitted its final indirect cost proposal for FY 2005 on 31 March 2006 (SOF ¶ 2). The question

7

before the Board, therefore, is whether it was reasonably knowable from the 31 March 2006 submission that Alion's final indirect cost rate proposal included the specific costs that the government alleges are expressly unallowable. *See Laguna Constr. Co.*, ASBCA No. 58569, 14-1 BCA ¶ 35,618 at 174,459 ("should have been known" test for claim accrual turns upon what facts were reasonably knowable to the claimant).

The government argues that it required detailed transaction information to determine whether Alion's final indirect cost rate proposal contained expressly unallowable costs (gov't resp. at 26). The government argues that it did not have the detailed transaction data required to determine the unallowability of Alion's costs with respect to the SRC cost elements until Alion submitted its salary related cost proposal on 20 February 2008, nor with respect to the remaining cost elements until Alion submitted the JAMIS database in January 2008 (*id.* at 27-28). Alternatively, the government contends that its claim did not accrue until Alion submitted adequate Schedules H and H-1 on 8 February 2008 (*id.* at 28-30). Alion maintains that its 31 March 2006 submission provided transaction-level detail for its claimed costs, triggering the accrual of the government's claim even though the submission did not include supporting data (app. mot. at 14-16, 18-19).

We conclude that Alion has failed to meet its summary judgment burden. Alion has established that data provided in the supporting schedules and corresponding spreadsheets in its 31 March 2006 submission contained information regarding some individual costs in its proposal (SOF ¶¶ 3-4). However, with regard to Alion's SRC costs in particular, the government has presented evidence that the SRC variance account did not identify the specific cost transactions forming the bases of the adjustments made therein (SOF ¶ 5). Respecting Alion's other costs, Alion has failed to identify within its 31 March 2006 proposal the specific costs at issue in this appeal. Viewing the record in the light most favorable to the government as the nonmoving party, as we must on summary judgment, *Computer Sciences Corp.*, ASBCA No. 56175, 11-1 BCA ¶ 34,631 at 170,645, there is a genuine issue of material fact as to whether the 31 March 2006 final indirect cost rate proposal included the alleged expressly unallowable costs at issue in this appeal.

8

## CONCLUSION

Alion's motion for summary judgment is denied.

Dated: 10 November 2015

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58992, Appeal of Alion Science and Technology Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9